AARON M. CLEFTON, Esq.  (SBN 318680)
CLEFTON DISABILITY LAW
2601 Blanding Ave, Suite C
#336
Alameda, CA 94501
Telephone:  510/832-5001
info@cleftonlaw.com

Attorneys for Plaintiff
MARY ELIZABETH WADE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY ELIZABETH WADE | CASE NO. 2:25-cv-6954 |
| Plaintiff, | <u>Civil Rights</u> |
| v. | **COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES REGARDING DENIAL OF SERVICE DOG AND HANDLER TO EQUALLY USE AND ENJOY PUBLIC ACCOMMODATION:** |
| RYLIST, INC. dba LA VENTANA TREATMENT PROGRAMS | |
| Defendant. | **1.  Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 _et seq._)** |
| | **2.  Violation of the California Disabled Persons Act (Cal. Civil Code § 54 _et seq._)** |
| | **Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)** |
| | <u>DEMAND FOR JURY TRIAL</u> |

## PREFETORY STATEMENT

1.    This is Plaintiff's third Americans with Disabilities Act ("ADA") lawsuit in her lifetime. It does not involve any architectural barriers, only denial of service dog claims. Plaintiff's law firm is not an ADA high-frequency litigation firm. Clefton Disability Law has represented over 150 unique disabled plaintiffs,

1

none of whom are high frequency litigants as defined by state law. Plaintiff MARY ELIZABETH WADE complains of Defendant RYLIST, INC. dba LA VENTANA TREATMENT PROGRAMS and alleges as follows:

**INTRODUCTION**

2.      Plaintiff Mary Elizabeth Wade is a disabled individual who uses the assistance of a service dog to ameliorate her disability. Defendant deprived disabled Plaintiff the use of her service dog during her first stay at La Ventana Treatment Programs and denied her entrance to the residential program due to her service dog on a second occasion. Plaintiff suffers from Ehlers Danlos Syndrome, which is why she uses a service dog to assist her with certain mobility related activities. She also struggles with anxiety which can cause panic attacks.  In the summer of 2023, Plaintiff was dealing with significant work stress which sent her into a spiral of anxiety, depression and substance abuse. She needed professional help and rehabilitation services for these issues. In August of 2023, Plaintiff began looking for treatment programs which could accommodate her physical, mental health, dietary, and economic needs.  Plaintiff found La Ventana to be the best option she could find for all four criteria. However, La Ventana told Plaintiff that they would not allow her to bring her service dog, Daisy, with her.

3.      Plaintiff was in an extremely vulnerable state; she needed professional assistance to stabilize both her mental health and substance abuse.  After several discussions with La Ventana staff about her need for her service dog, it was very clear that they would not allow Plaintiff to be accompanied by her service dog while she received treatment at Defendant's facility.  On or about August 25, 2023, Plaintiff checked into La Ventana treatment facility without her service dog, despite it being the wrong way to minimize the impacts of her disability in her daily life at the location. What is more, the denial was needless. Daisy is professionally trained, and there was plenty of outdoor space at the facility for Plaintiff to care for her dog.

4.      Despite repeated requests from Plaintiff to be allowed access to her

service dog to several different employees and managers, Defendant categorically refused to allow Plaintiff to use Daisy. Defendant did so without asking any questions about Daisy, her tasks, or their relationship with Plaintiff's disability, or making any individualized assessment of whether it was reasonable to allow Daisy at the facility. Instead, Daisy was only allowed to visit on one occasion during Plaintiff's stay.

5.    Ultimately, Plaintiff had to cut her stay at Defendant's facility short because of her lack of access to her service dog, among other reasons.  Both leaving La Ventana early and the lack of access to her service dog hampered Plaintiff's recovery process.  The whole experience was difficult and embarrassing for Plaintiff, and she felt unsafe not being allowed to have Daisy accompany her during her recovery. It also damaged her ability to bond with her service dog for over a week.  This was unfortunate, because it was otherwise a very effective program for her and one that met her dietary requirements, unlike other programs she had researched.

6.    In April of 2025, Plaintiff was once again looking for assistance in stabilizing her mental health and substance use at an in-patient treatment facility. She again contacted La Ventana Treatment Program because she knew that their facility met her physical and dietary needs.  However, when Plaintiff requested that she be allowed to bring her service dog to the facility with her for treatment, Defendant recommended that she be enrolled in their outpatient treatment facility despite Plaintiff's specific request for residential treatment.  Further, Defendant never specifically responded with approval to her request to bring her service animal with her during treatment.  Plaintiff was unable to receive treatment at La Ventana due to their lack of approval of allowing her service animal to be with her at a residential treatment facility.

7.    After weeks of repeated assessments, emails and calls, and finally, Plaintiff's attorney's intervention, a host of pretenses were given for Defendant's

COMPLAINT FOR DECLATORY AND INJUNCTIVE RELIEF AND DAMAGES

refusal to treat Plaintiff at an in-treatment facility. These included heretofore undisclosed reasons never given to Plaintiff, including that Plaintiff had been banned from the facility for alcohol use during her August 2023 stay, that her insurance had denied the claim, and that her medical need was not great enough to require in-patient care.  All of these ex post facto reasons were never disclosed to Plaintiff and contradicted Defendant's behavior of inviting her for more assessments and out-patient treatment.  Notably, all these reasons were given after Plaintiff's request to be accompanied by her service dog, signaling their specious nature as pretenses. Plaintiff's symptoms were not very different between her August 2023 and April 2025 episodes, further casting doubt that the stay was not medically necessary.

8.    The Defendant's decision to bar service dogs from in-patient treatment is patently discriminatory and did not afford equal access and enjoyment of Defendant's services.  It also contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals."  In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence.
- Establishments that sell or prepare food must generally allow service animals in public areas even if state or local health codes prohibit animals on the premises.
- People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals.

4

DOJ 2010 "Service Animal" guidance available at

https://www.ada.gov/resources/service-animals-2010-requirements/.

9.      Defendant has discriminated against Plaintiff by not allowing her to receive treatment at its facilities while accompanied by her service dog. Defendant must compensate Plaintiff for refusing to treat her with her service dog, significantly delaying her treatment, and ultimately refusing her treatment all because she is a disabled person who needs the assistance of her qualified service dog.  As a result of Defendant's illegal acts, collectively and individually, Plaintiff suffered continuing denial of her civil rights and suffered physical, mental, and emotional damages.

10.      Defendant's policy violated state and federal law prohibitions against 1) depriving disabled persons as compared with able bodied persons of "full and equal accommodations, advantages, facilities, privileges, or services" under the Unruh Civil Rights Act ("UCRA"), 2) "full and equal access" under the California Disabled Persons Act ("DPA"), and 3) "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation" under the federal Americans with Disabilities Act ("ADA"), as incorporated into state law.

11.      La Ventana is conveniently located for Plaintiff, the facility is covered by her health insurance, and it also meets her physical and dietary needs.  Plaintiff would like to return to La Ventana to receive treatment, but she cannot do so until the policies of the La Ventana are made accessible to disabled individuals who use service dogs, including revision of their service dog policies and necessary employee training and/or re-training.  She brought this lawsuit to force Defendant to change its discriminatory and illegal policies and compensate her for refusing to allow her to access to her service dog during her treatment and retaliating against her for asserting her right to have her service dog accompany her during treatment. Plaintiff seeks an injunction to protect the rights of all disabled persons, including

1   Plaintiff, when accompanied by a qualified service dog at La Ventana Treatment
2   Programs.

3   **JURISDICTION AND VENUE**

4   12.     This Court has jurisdiction of this action pursuant to 28 U.S.C.
5   sections 1331 and 1343.  This Court has jurisdiction over the claims brought under
6   California law pursuant to 28 U.S.C. § 1367.

7   13.     Venue is proper in this court pursuant to 28 U.S.C. section 1391(b) and
8   is proper because the real property which is the subject of this action is in this
9   district and that Plaintiff's causes of action arose in this district.

10   14.     This case should be assigned to the Western Division because the real
11   property which is the subject of this action is in this intradistrict and Plaintiff's
12   causes of action arose in this intradistrict.

13   **PARTIES**

14   15.     Plaintiff Mary Elizabeth Wade is a "qualified" disabled person who
15   uses a service dog to assist her with mobility tasks.  She suffers from Ehlers-Danlos
16   Syndrome which is a connective tissue disease that affects her mobility and causes
17   her ligaments to be very loose which can lead to joint dislocation and bone
18   fractures. Ehlers-Danlos Syndrome causes symptoms of general joint
19   hypermobility, instability and deterioration which has led Plaintiff to undergo
20   multiple joint replacements, repeated dislocations, and bone fractures. Plaintiff also
21   suffers from systemic dysautonomia which causes swings in heart rate and blood
22   pressure and an inability to withstand temperature changes. Plaintiff's condition is
23   such that on some days she can barely move due to the pain but on other days she is
24   able to walk independently. Plaintiff's disability affects her ability to walk, bend,
25   and lift objects.  She has been issued a disabled parking placard by the State of
26   California which allows her to park in properly configured designated accessible
27   parking places. Plaintiff also has significant dietary restriction due to a previous
28   stomach surgery.  She requires a bland, gluten free diet that is high in protein, and

6

1  she is unable to eat coconut.

2      16.    Plaintiff relies upon her service dog, a beagle named "Daisy," to assist

3  her with certain tasks including picking up objects off the floor when Plaintiff drops

4  them as well as retrieving certain everyday objects for Plaintiff.  Daisy is also

5  trained to alert Plaintiff of certain dangerous medical conditions, such as low blood

6  pressure which can cause plaintiff to faint. Plaintiff is also in the process of training

7  Daisy alert people when if she falls and cannot get up or is rendered unconscious.

8      17.    Daisy was and continues to be professionally trained to be a service

9  dog by a professional trainer.  Plaintiff and Daisy have been working together for

10  three years.  Plaintiff and Daisy reinforce their training together daily. Plaintiff is a

11  qualified person with a disability as defined under federal and state law.  42 U.S.C.

12  § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

13      18.    Defendant RYLIST, INC. dba LA VENTANA TREATMENT

14  PROGRAMS, is and was at all times relevant to this Complaint the owner,

15  operator, lessor and/or lessee of the subject business known as La Ventana

16  Treatment Program located at 155 East Wilbur Road, Thousand Oaks, California

17  91360.

18      19.    La Ventana Treatment Program is a place of "public accommodation"

19  and a "business establishment" subject to the requirements *among other things* of

20  multiple categories of 42 U.S.C. section 12181(7) of the Americans with

21  Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of

22  California Civil Code sections 54 *et seq*.

23                          **FACTUAL STATEMENT**

24      20.    Plaintiff Mary Elizabeth Wade has been working with her service dog

25  Daisy for three years.  Daisy is a five-year-old beagle who was trained to be a

26  service dog. Daisy was both professionally trained by trainer Robin Roy, and she

27  and Plaintiff also trained together with Ms. Roy.  Plaintiff has also continued to

28  train Daisy to serve her specific needs throughout their relationship.  Daisy is

specifically trained to assist Plaintiff with certain tasks including picking up objects off the floor when Plaintiff drops them as well as retrieving certain everyday objects for Plaintiff. Daisy is also trained to alert Plaintiff of certain dangerous medical conditions, such as low blood pressure which can cause plaintiff to faint.

21.    Daisy is a working service dog; she is not a pet.  Plaintiff and Daisy have trained extensively together, and they supplement that training daily.  Plaintiff takes Daisy everywhere with her in public.  It is important they stay together as much as possible because (a) Daisy provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond.  With few exceptions, where Plaintiff goes, Daisy goes.  Below is a photo of Daisy:



**First Incident**

22.    In August of 2023, Plaintiff was experiencing a significant deterioration in her mental health and substance abuse due to work related stress. Plaintiff made the difficult decision to receive treatment at a residential facility which could treat both her mental health issues stemming from current and past

1    trauma as well as her alcohol use.

2        23.    Plaintiff researched many different potential facilities in Southern

3    California before settling on La Ventana.  Plaintiff was looking for a program that

4    could satisfy her physical, mental, and economic needs.  The program needed to 1)

5    accommodate her dietary restrictions, 2) have a facility where she did not need to

6    climb stairs, 3) allow down time throughout the day to accommodate her fatigue, 4)

7    allow cell phone use (due to ongoing work issues she was dealing with), 5) accept

8    her insurance, 6) have a home-like environment, 7) had staff that could transport

9    her to medical appointments, and 8) would allow her service dog to accompany her

10   throughout her stay.  La Ventana met all of her needs except that all of the

11   employees she spoke with told her that no dogs, even service dogs, were allowed

12   inside the residential treatment facilities at La Ventana.

13       24.    Plaintiff got several referrals from her therapist and from previous

14   facilities where she had received treatment.  She called at least six other facilities

15   which could not meet her needs before deciding that La Ventana was the best fit.

16   Sometime during the second week of August 2023, Plaintiff called the phone

17   number for admissions at La Ventana and began the evaluation process for being

18   admitted to the facility.

19       25.    La Ventana agreed to admit Plaintiff into one of their residential

20   facilities, an all-woman trauma house.  Plaintiff informed Defendant's employees

21   during the admissions process and during her follow-up calls that she used a task

22   trained service dog named Daisy who helped ameliorate her disability.  She

23   specifically requested that Daisy be allowed to accompany her during her stay at La

24   Ventana.  However, each time she brought it up with one of Defendant's

25   employees, they told her that she would not be allowed to bring Daisy to the facility

26   with her.  No dogs, including service dogs, were allowed at La Ventana facilities.

27       26.    Despite several attempts to convince Defendant otherwise, La Ventana

28   would not budge on their decision.  Plaintiff could receive treatment at La Ventana,

1  but her service dog was not welcome to accompany her.

2  27.    Unfortunately, Plaintiff's mental health and substance abuse issues

3  continued to deteriorate, such that she was in desperate need of residential

4  treatment.  Ultimately, Plaintiff made the difficult choice to receive treatment at La

5  Ventana without having her service dog accompany her. She detoxed for a week at

6  home pursuant to the request of Defendant, but she continued to stay in contact

7  with Defendant so that they knew she was still planning to come.

8  28.    Without a meaningful choice about the matter, Plaintiff boarded her

9  service dog. She checked into La Ventana for treatment on or about August 25,

10  2023. Plaintiff was assigned to a house with six patient beds, but only two were

11  occupied at the time. Plaintiff had her own room.  The facility had plenty of room

12  to accommodate Daisy, and it had a yard that Plaintiff could have used to exercise

13  and toilet Daisy. It was not a closed or locked facility. Nothing about the

14  configuration of the grounds, her room, or any interaction with others at the facility

15  would have prevented Plaintiff from caring for Daisy independently nor would

16  Daisy's presence otherwise interfere with Plaintiff's treatment or the treatment of

17  others.

18  29.    During Plaintiff's stay at La Ventana, she found out that Daisy was not

19  doing well at the boarding facility where she was staying. Neither Daisy nor

20  Plaintiff were used to being apart from one another, and neither was happy without

21  the other. Plaintiff had to make arrangements for her dog trainer to pick up Daisy

22  from the boarding facility and keep her at her home while she was staying at La

23  Ventana.

24  30.    Plaintiff talked about Daisy all the time during her stay at La Ventana,

25  including how much she missed her and relied upon her to perform tasks to

26  ameliorate her disability.  It was clear that Defendant's staff took Plaintiff's and

27  Daisy's bond seriously because they printed out photos of Daisy for Plaintiff so that

28  she could have them while she was staying at La Ventana.

31.     La Ventana allowed visitors on the weekends, and Plaintiff requested that she be allowed to have her service dog visit her during the visiting hours. Defendant agreed that Diasy could come for a visit, but staff informed Plaintiff that she would have to keep Daisy outside and that Daisy would have to be accompanied by another person while she was visiting.  She could not simply be dropped off and then picked up with visiting hours ended.  Despite the restrictions, Plaintiff was so desperate to spend time with Daisy that she made arrangements for Daisy's trainer to bring Daisy to the La Ventana facility and accompany her throughout her stay. Several of Defendant's staff came to meet Daisy on visiting day and commented on how well-behaved she was.

32.     Although Plaintiff had planned on staying at La Ventana for at least 30 days, she left the facility against medical advice on September 7, 2023, after only 12 days of treatment. Plaintiff felt that she was making some progress at La Ventana, but one of the therapists who was treating her was triggering flashback trauma for Plaintiff. Additionally, her inability to have Daisy accompany her was also distressing.  Plaintiff's early departure was detrimental to her recovery, but she left in part because not being allowed to be accompanied by her service dog, Daisy, at Defendant's facility was even more detrimental to her general health, safety, and recovery. Aside from the issue of the therapist that did not meet her needs and the service dog policy, Plaintiff's stay was otherwise restful and helpful in her recovery.

33.     Regrettably, Plaintiff relapsed after she left the facility. While at home after she was gone from the facility, she made a Door Dash delivery order for alcohol that she intended to send to her home. Plaintiff did not notice that she had inadvertently sent the Door Dash order to be delivered to La Ventana. Embarrassed, she tried to cancel the order, but it was too late. However, no staff member contacted Plaintiff about this issue. While consuming or bringing alcohol to La Ventana violated its policies, Plaintiff had already left the facility.  No one

informed her that this mistake had resulted in her being blacklisted from the facility until she attempted to bring her service dog for a second visit.

34.    Following her early departure from treatment at La Ventana, Defendant contacted Plaintiff to try to convince her to come back for the remainder of her treatment.  Defendant's representative even spoke to Plaintiff's friend and power of attorney, Mike, about having her return. However, when he asked Defendant if Plaintiff would be allowed to bring his service dog if she returned, Defendant continued to state the service dogs were not allowed at La Ventana. Plaintiff did not want to return without Daisy.

**Second Incident**

35.    In March of 2025, Plaintiff's mental health again began to deteriorate. She found herself feeling overwhelmed, angry, out of control, and avoiding responsibilities. On March 17, 2025, Plaintiff stopped consuming alcohol which forced her to face her mental health issues without her usual coping mechanism, so she began searching for other tools that would help her function and stay sober.

36.    Once again, Plaintiff thought that a residential treatment facility which treated both substance abuse and mental health crises would be beneficial for her. She began looking into possible facilities with the same criteria as in 2023. The program needed to 1) accommodate her dietary restrictions, 2) have a facility where she did not need to climb stairs, 3) allow down time throughout the day to accommodate her fatigue, 4) allow cell phone use (due to ongoing work issues she was dealing with), 5) accept her insurance, 6) have a home-like environment, 7) had staff that could transport her to medical appointments, and 8) would allow her service dog to accompany her throughout her stay. This time, however, Plaintiff was determined to find a facility that would allow her to be accompanied by her service dog.

37.    Plaintiff found that La Ventana was still the best fit for her, so on or about March 19, 2025, Plaintiff reached out to Defendant to request an intake.

Plaintiff and Defendant's staff agreed to complete intake on the telephone on April 10, 2025.

38.    On April 4, 2025, Plaintiff emailed Defendant and asked whether it could accommodate her service dog at La Ventana.  Plaintiff wrote in part:

> I found my time in La Ventana's women's trauma house VERY helpful and need to return.  However, at the time, I was not allowed to bring my service dog.  This caused me difficulty with managing my disabilities with constant increased pain during my stay and caused me the added expense of boarding my dog while I was there. I would like to avoid the same thing happening when I visit again, which I would like to do as soon as possible.
>
> Can you please accommodate my service dog Daisy this time? She is a 27.5 lb. beagle.  She is housebroken, doesn't bark, loves everyone, and is very well trained. I need her for my disabilities. She is trained to help me for example by picking up objects when my disability prevents me from doing so safely.
>
> Please let me know if she is able to stay with me, and I will contact admissions.
>
> Thanks for your help,
>
> Liz (Mary Elizabeth) Wade

39.    On or about April 7, 2025, Plaintiff received a call from one of Defendant's employees who identified herself as working in admissions.  She asked Plaintiff some questions about her service dog, including some that she was not legally allowed to ask, such as about certification, but ultimately, Defendant's employee told Plaintiff that she did not think Defendant would exclude Daisy from the facility.  Plaintiff was heartened by this conversation, and she went into the intake process thinking it would be smooth sailing.

40.    On or about April 10, 2025, Plaintiff participated in an intake phone call with one of Defendant's employees who identified himself as Billy. Plaintiff was forthright during the intake process and answered all of Billy's questions to the best of her ability.  She told Billy that she would like to be placed in the all-woman trauma house because she thought that environment would be beneficial to her at

this time. At the end of her conversation with Billy, Plaintiff again asked whether her service dog, Daisy, would be allowed to accompany her during her treatment at La Ventana.  Billy did not have a definitive answer about whether Daisy would be allowed, but he assured Plaintiff that they would "work it out." Billy concluded the call by telling Plaintiff that he would finalize everything and then a La Ventana representative would be in touch with her soon.

41.    Plaintiff did not hear from Defendant for a few days, so she called Defendant on or about Monday, April 14, 2025. During that call, the intake specialist she spoke with told Plaintiff that Defendant wanted her to participate in an outpatient substance abuse program rather than a residential mental health/trauma program.  Plaintiff was surprised because she had made it clear during her intake that what she really needed was support around learning new tools to support her mental health issues so that she would not have to rely on alcohol as a means of dealing with her past trauma. Plaintiff asked if Defendant would allow her to enter the residential treatment program at the all-woman trauma house instead. At this point, Defendant's employee told Plaintiff that the all-woman trauma house was full.  Plaintiff responded that she was having a procedure done on May 1, 2025, so she would prefer to begin her treatment after that anyway.  At no time had Defendant mentioned that her insurance had been denied.

42.    Defendant's employee informed Plaintiff that there was a waiting list for entry to the all-woman trauma house, and again Plaintiff said that was fine since she wanted to delay her treatment anyway.  Defendant's employee then scheduled another intake appointment for Plaintiff to speak with Billy on April 29, 2025.

43.    After this call with Defendant, Plaintiff felt as if Defendant was not being completely forthright about her treatment needs and plan. She wanted Defendant to confirm, in writing, that she would be allowed bring her service dog with her if and when she began treatment at La Ventana.  On April 16, 2025, Plaintiff wrote the following email to the management team and admissions

representative:

> Sharon, Wendy, Jennifer, and Rebecca,
>
> I previously wrote on April 4 (see below) to confirm that I am able to take my service dog Daisy with me if I stay with La Ventana. I haven't heard back anything definitive or from anyone in management. When Rebecca in Admissions and I spoke on the phone on April 7, she indicated that I might be able to bring Daisy, but the conversation wasn't clear, and she wasn't certain. On April 10, when I spoke with Billy for the intake interview, I asked for confirmation again, but he was unaware of the situation. Can you please confirm that I can stay with my service dog? It would cause me harm if I were to show up and be denied her assistance. I don't want that. Can you please respond to this email and let me know?
>
> Sincerely,
>
> Liz

44.     Defendant responded by asking Plaintiff to call them to discuss the situation. On Thursday, April 17, 2025, Plaintiff called Defendant as requested, and she left a voicemail requesting a call back. Defendant did not call Plaintiff, so on April 21, 2025, Plaintiff emailed Defendant and again requested that they confirm that her service dog would be allowed to accompany her to treatment at La Ventana.

45.     On April 21, 2025, Plaintiff spoke with one of Defendant's employees, Rebecca Quinn about the situation. After that conversation, Plaintiff sent the following email to confirm what they had discussed:

> To whom it may concern,
>
> I spoke with Rebecca in admissions this morning regarding staying at the women's trauma house with my service dog. The conversation was a bit confusing to me. It is my understanding that I will not be admitted to any in-patient program at La Ventana so long as I have a service dog with me, but rather I could attend outpatient PHP instead. However, the PHP program is not what I need, as it is not focused on past traumas, and I need an inpatient level of care at this time. As I understand it, that clinical recommendation means that I will not be allowed into the in-patient program. I was not provided with a reason for this decision or the name of the person who made it.
>
> I asked Rebecca to send me a summary email of what she was saying so there would be no miscommunication. Since I did not receive that email, I am clarifying here. If there is a misunderstanding, please

respond by email to clarify before the end of this week. I need to find an in-patient program that will allow me to use my service dog and can't afford to wait longer than Friday before I start looking elsewhere. Trying to sort this issue out has already taken about three weeks. I don't want to arrive and be turned away. Given the confusing phone conversations about my service dog, I would really like to know in writing if my service dog can come with me or not to the in-patient women's trauma program.

The time I spent with La Ventana in the past really helped me. I hope you will let me stay with my service dog.

Sincerely,

Liz Wade

46.    On April 22, 2025, Defendant wrote Plaintiff the following letter:

Dear Mary "Liz" Wade,

You were assessed by La Ventana Treatment Programs on 04/10/2025 and were tentatively accepted for the Co-Occurring Program at the PHP level of care. Admission date has not been set at this time as you are not in agreement with our recommendation. We feel that as per the information provided in your assessment this was the best recommendation at the time.

La Ventana is an ASAM designated and certified facility. We are also JCAHO accredited. Our programs are designed to assist individuals with addressing their mental wellness and co-occurring substance/alcohol use problems so that they may develop a strong recovery foundation upon which they may build a productive, responsible and healthy life. La Ventana offers highly individualized recovery plans to promote abstinence, wellness and individual accountability. Our specialized services may include: individual and group therapy; family support and education; structured housing options and daily routine. In addition psychiatric services are provided as needed

If you have any questions please feel free to call me at 805-206-5391. Thank you.

Cordially,

Sharon Volner, LMFT
Chief Clinical Officer
La Ventana Treatment Programs

47.    This letter did not mention any blacklisting of Plaintiff. It did not mention any insurance denial. The letter also failed to address any of the concerns brought up by Plaintiff including why she was being denied her request for in-patient treatment and whether Defendant would allow her to be accompanied by her

16

service dog at *any* treatment it provides.  On April 22, 2025, Plaintiff wrote the following back to Sharon Volner, LMFT:

> Thank you for your letter. I am not able to follow your recommendation because the facility is too far away, and I believe I really need in-patient treatment now more than ever.  Can you please let me know if you would accept me into the in-patient program with my service dog?  Or if you can't or won't allow me to be there for in-patient care, can you please tell me why?  I don't understand what is going on.  I was admitted without my service dog before this and was not referred to outpatient care then.  I am in a worse state now than I was then.  I hope you will not turn me away.  I could really use your help.
>
> Sincerely,
>
> Liz

48.    Ms. Volner simply replied to Plaintiff by stating the everything had been answered in the letter but stated that Plaintiff could call with questions.

49.    On April 25, 2025, Plaintiff followed up with the following email:

> Sharon,
>
> Thank you for your message yesterday.   The letter didn't answer my main question which is whether you allow service dogs now or not for in-patient care.  Can you please let me know so I may go somewhere else if you don't.  Not knowing is aggravating my current panic episodes.
>
> As you may recall from my last stay at La Ventana, I have two separate instances of PTSD that prevent me from calling you to discuss this, a childhood related one and a separate phone call related one.  In addition, I am on the spectrum and don't read between the lines well.  You seem to be saying that you still don't allow service dogs.  Please confirm so that I may proceed with my treatment elsewhere if necessary.
>
> The unique reasons why admission into the women's trauma house of La Ventana are so important to me include:
>
> 1) Several of the classes there are the most helpful to my situation that I've ever had at any facility, in-patient or out-patient.  Anxiety and panic attacks stemming from past traumas are far and away the most problematic issues preventing me from enjoying my life, making human connections, and at times preventing me from even doing the minimal functioning I need to do.
>
> 2) The small, home-like environment is not over-stimulating / anxiety-provoking to me.
>
> 3) The schedule is not over-taxing, and the evening and weekend activities are quite enjoyable and give me suggestions for what to fill

COMPLAINT FOR DECLATORY AND INJUNCTIVE RELIEF AND DAMAGES

my free-time with at home.

4) I need the structure of the limited use of cell phones in order to disconnect from life stressors, especially right now.

5) The scheduled time and referrals for aftercare were the best I've ever received.

6) There were no stairs, which are difficult at best for me since all my surgeries. They would be impossible to navigate with a laundry basket.

7) My dietary requirements were not only met, but were met in an easy and tasty way. This need has been surprisingly difficult to meet elsewhere.

Thank you,

Liz

50.    Plaintiff did not receive a response from Defendant. However, on April 29, 2025, she waited for Billy to call her for her second intake interview. No one from La Ventana called, so she emailed them in the late afternoon on April 29, 2025, to see if anyone was going to call her. Additionally, Plaintiff wrote, "Also, I still haven't heard back about my service dog, so I will assume she is not allowed like last time I stayed with La Ventana. I will find someplace that allows her. If this is inaccurate, please let me know right away." Once again Defendant simply responded that "everything was answered in the letter" even though none of her questions were answered in the letter. Plaintiff emailed and left messages with Defendant, but Defendant initially did not respond. Eventually, Defendant suggested that Plaintiff set up another intake interview.

51.    Plaintiff scheduled a third intake interview with Defendant for May, 10, 2025, at 2:00 pm. Once again, Defendant failed to contact her at the agreed upon time. When she called Defendant, no one answered. Defendant did ultimately call her back, and they scheduled a fourth intake call for May 12, 2025. Defendant did call Plaintiff on May 12, 2025, and she once again answered all of their questions as openly and honestly as possible. Defendant again would not confirm whether she would be allowed to bring her service animal with her.

Further, despite Defendant's assurance to Plaintiff that they would follow up with her the next day, no one contacted Plaintiff.

52.    It is Plaintiff's belief that Defendant has retaliated against her and refused to provide her with the in-patient treatment she needs due to the presence of her service dog.  Further, once she pushed them to confirm whether or not her service dog would be allowed in Defendant's facilities, La Ventana refused to respond to the question and ultimately ceased all communications with Plaintiff. All of this caused significant strain on Plaintiff and caused further deterioration of her physical and mental health.

53.    On May 15, 2025, through her counsel, Plaintiff offered to waive all claims for damages and attorney fees for all claims including from August 2023 and current ones, if La Ventana would admit her to its in-patient program with her service dog.  Defendant refused.  Instead, Defendant's manager "Sharon" had a phone call with Plaintiff's counsel.  After Plaintiff's counsel advised her she should seek legal counsel before continuing to speak with him, the Manager continued with the call.  On this call she advised for the first time that Plaintiff was barred from the facility permanently for the Door Dash alcohol delivery in September of 2023.  Defendant also claimed, for the first time, that Plaintiff's insurance had been denied for the 2025 stay because she did not "fit the insurance criteria." She promised to produce the insurance denial, which she never did.

54.    Plaintiff is like many who struggle with mental health issues and addiction. She needs help.  She still believes, despite the issues with her service dog, that La Ventana is the best option for her mental health to improve considering all the factors for her choosing a rehabilitation facility that is right for her. However, Plaintiff does not want to go back to La Ventana because her previous experiences have made it clear that Defendant does not maintain a service animal policy that complies with state and federal access laws.  It is also clear that Defendant's employees have not received training about how to interact with

19

1  disabled patrons who rely on service dogs for assistance.

2      55.    Plaintiff wishes to return La Ventana to receive treatment, but only

3  *after* Defendant has implemented proper service animal policies and training of its

4  staff.  Plaintiff is deterred from returning to the facility until these policies and

5  training are in place.

6                          **FIRST CAUSE OF ACTION:**
   **VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
7                          **(42 U.S.C. §§ 12101 *et seq.*)**

8      56.    Plaintiff repleads and incorporates by reference, as if fully set forth

9  again here, the factual allegations contained in Paragraphs 1 through 55, above, and

10 incorporates them here by reference as if separately repled hereafter.

11     57.    In 1990 Congress passed the Americans with Disabilities Act after

12 finding that laws were needed to more fully protect "some 43 million Americans

13 with one or more physical or mental disabilities; that historically society has tended

14 to isolate and segregate individuals with disabilities;" that "such forms of

15 discrimination against individuals with disabilities continue to be a serious and

16 pervasive social problem"; that "the Nation's proper goals regarding individuals

17 with disabilities are to assure equality of opportunity, full participation, independent

18 living and economic self-sufficiency for such individuals"; and that "the continuing

19 existence of unfair and unnecessary discrimination and prejudice denies people

20 with disabilities the opportunity to compete on an equal basis and to pursue those

21 opportunities for which our free society is justifiably famous."  42 U.S.C. §

22 12101(a).

23     58.    The ADA provides, "No individual shall be discriminated against on

24 the basis of disability in the full and equal enjoyment of the goods, services,

25 facilities, privileges, advantages, or accommodations of any place of public

26 accommodation by any person who owns, leases, or leases to, or operates a place of

27 public accommodation." 42 U.S.C. § 12182.

28     59.    Plaintiff is a qualified individual with a disability as defined in the

Rehabilitation Act and in the Americans with Disabilities Act of 1990.

60.    La Ventana Treatment Program is a public accommodation under Title III of the ADA.  42 U.S.C. § 12181(7)(F).

61.    The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).

62.    Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go."  ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm  Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

63.    Defendant has a policy and practice of denying access to patrons of La Ventana Treatment Program with service animals. The Defendant's decision to bar service animals contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals."  In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence**.**

- Establishments that sell or prepare food must generally allow service animals in public areas even if state or local health codes prohibit animals on the premises.
- People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals.

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/.

64.    On information and belief, as of the date of Plaintiff's most recent with La Ventana Treatment Program in May of 2025, Defendant continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

65.    In passing the Americans with Disabilities Act of 1990 ("ADA"), Congress stated as its purpose:

It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b).

66.    As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 U.S.C. § 12181 *et*

22

*seq.*).  The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to any "professional office of a health care provider" or "hospital." 42 U.S.C. § 12181(7)(F).

67.    The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

The acts and omissions of Defendant set forth here were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

68.    On information and belief, as of the dates of Plaintiff's encounters at

23

1    the premises and as of the filing of this Complaint, Defendant's actions, policies,

2    and physical premises have denied and continue to deny full and equal access to

3    Plaintiff and to other disabled persons who work with service dogs, which violates

4    Plaintiff's right to full and equal access and which discriminates against Plaintiff on

5    the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal

6    enjoyment of the goods, services, facilities, privileges, advantages and

7    accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

8         69.    Defendant's actions continue to deny Plaintiff's right to full and equal

9    access by deterring Plaintiff from patronizing La Ventana Treatment Program and

10   discriminated and continue to discriminate against her on the basis of her

11   disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of

12   Defendant's goods, services, facilities, privileges, advantages and accommodations,

13   in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

14        70.    Under the Americans with Disabilities Act, 42 U.S.C. sections 12188

15   *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in

16   section 204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as Plaintiff

17   is being subjected to discrimination on the basis of her disabilities in violation of

18   sections 12182 and 12183 of this title.  On information and belief, Defendant has

19   continued to violate the law and deny the rights of Plaintiff and other disabled

20   persons to "full and equal" access to this public accommodation since on or before

21   Plaintiff's encounters.  Under section 12188(a)(2)

22            [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)...
             injunctive relief shall include an order to alter facilities to make such
23           facilities readily accessible to and usable by individuals with disabilities
             to the extent required by this title.  Where appropriate, injunctive relief
24           shall also include requiring the provision of an auxiliary aid or service,
             modification of a policy, or provision of alternative methods, to the
25           extent required by this title.

26        71.    Plaintiff seeks relief under remedies set forth in section 204(a) of the

27   Civil Rights Act of 1964 (42 U.S.C. 2000(a)-3(a)), and pursuant to Federal

28   Regulations adopted to implement the Americans with Disabilities Act of 1990.

Plaintiff is a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing she will be subjected to such discrimination each time that she may use the property and premises, or attempt to patronize La Ventana Treatment Program, in light of Defendant's policy barriers.

WHEREFORE, Plaintiff prays for relief as stated below.

### SECOND CAUSE OF ACTION:
### DAMAGES AND INJUNCTIVE RELIEF
### FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES IN A PUBLIC ACCOMMODATION
### (Civil Code §§ 54 et seq.)

72.    Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 71 of this Complaint and all paragraphs of the second cause of action, as plead infra, incorporates them here as if separately re-pleaded.

73.    Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places."  Civil Code § 54(a).

74.    Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with disabilities to "accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices . . . or other places to which the general public is invited."  Civil Code § 54.1(c) also specifies that, "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

75.    Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

76.     Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2." This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

77.     La Ventana Treatment Program is a public accommodation within the meaning of the CDPA. On information and belief, Defendant is the owner, operator, lessor or lessee of the public accommodation.

78.     Defendant made the decision to knowingly and willfully exclude Plaintiff and her service dog from its public accommodation and thereby deny Plaintiff her right of entrance into its place of business with her service dog. As a result of the denial of full and equal access to Plaintiff at La Ventana by Defendant, Plaintiff has suffered a violation of her civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to her damages per Civil Code section 54.3, including general and statutory damages, and treble damages, as stated here. Defendant's actions and omissions to act constitute discrimination against Plaintiff because she was and is physically disabled and unable, because of the policy barriers created and/or maintained by the Defendant in violation of the subject laws, to use the public facilities on a full and equal basis as other persons. The violations have deterred Plaintiff from returning to attempt to patronize La Ventana.

79.     Further, although Plaintiff need not prove wrongful intent in order to show a violation of California Civil Code sections 54 and 54.1 (see *Donald v. Café Royale*, 218 Cal. App. 3d 168, 177 (1990)), Defendant's behavior was intentional. Defendant was aware and/or was made aware of their duties to refrain from

establishing discriminatory policies against disabled persons, before this complaint was filed. Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for her rights and safety.

80.    **FEES AND COSTS**:  As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees and costs, pursuant to the provisions of Civil Code § 54.3.

WHEREFORE, Plaintiff prays for relief as stated below.

**THIRD CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED BY CIVIL CODE SECTION 51(f)**

81.    Plaintiff re-pleads and incorporates by reference, as if fully set forth again here, the allegations contained in Paragraphs 1 through 80 of this Complaint and incorporates them here as if separately re-pleaded.

82.    At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

83.    California Civil Code section 52 provides that the discrimination by Defendant against Plaintiff on the basis of her disability violates the general anti-discrimination provisions of sections 51 and 52.

84.    La Ventana Treatment Program is a business establishment within the meaning of the Unruh Act.  Defendant is the owner and operator of the business

27

1  establishment.

2       85.    Each of Defendant's discriminatory acts or omissions constitutes a

3  separate violation of California Civil Code section 52, which provides that:

4       Whoever denies, aids or incites a denial, or makes any discrimination
        or distinction contrary to section 51, 51.5, or 51.6 is liable for each and
5       every offense for the actual damages, and any amount that may be
        determined by a jury, or a court sitting without a jury, up to a maximum
6       of three times the amount of actual damage but in no case less than four
        thousand dollars ($4,000), and any attorney's fees that may be
7       determined by the court in addition thereto, suffered by any person
        denied the rights provided in Section 51, 51.5, or 51.6.
8

9       86.    Any violation of the Americans with Disabilities Act of 1990

10 constitutes a violation of California Civil Code section 51(f), thus independently

11 justifying an award of damages and injunctive relief under California law, including

12 Civil Code section 52.  Per Civil Code section 51(f), "A violation of the right of any

13 individual under the Americans with Disabilities Act of 1990 (Public Law 101-336)

14 shall also constitute a violation of this section."

15      87.    The ADA prohibits, among other types of discrimination, "failure to

16 make reasonable modifications in policies, practices or procedures when such

17 modifications are necessary to afford such goods, services, facilities, privileges,

18 advantages or accommodations to individuals with disabilities."  42 U.S.C. §

19 12182(b)(2)(A)(ii).

20      88.    Under the "2010 Revised ADA Requirements: Service Animals," as

21 published by the United States Department of Justice, and distributed by the DOJ's

22 Civil Rights Division, Disability Rights Section, "Generally, title II and title III

23 entities must permit service animals to accompany people with disabilities in all

24 areas where members of the public are allowed to go."  ADA 2010 Revised

25 Requirements, www.ada.gov/service -animals-2010.htm  Further,

26      **Under the ADA, State and local governments, businesses, and
        nonprofit organizations that serve the public generally must allow**
27      **service animals to accompany people with disabilities in all areas of
        the facility where the public is normally allowed to go.**
28

28

*Ibid.*, emphasis in original.

89.    Defendant has a policy and practice of denying access to patients with service animals.

90.    The actions and omissions of Defendant as here alleged constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs within the meaning of California Civil Code sections 51 and 52.  As a proximate result of Defendant's action and omissions, Defendant has discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and are responsible for statutory, compensatory and treble damages to Plaintiff, according to proof.

91.    Defendant's behavior was intentional: Defendant was aware and/or was made aware of its duties to refrain from establishing discriminatory policies against physically disabled persons, before this Complaint was filed.  Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for her rights and safety.

92.    **FEES AND COSTS**:  As a result of Defendant's acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees and costs pursuant to the provisions of California Civil Code § 52.4(a).

93.    Plaintiff suffered damages as above-described as a result of Defendant's violations.

WHEREFORE, Plaintiff prays for relief as stated below.

# **PRAYER**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as stated in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury because of the unlawful acts, omissions, policies, and practices of Defendant as alleged herein, unless Plaintiff is granted the relief she requests. Plaintiff and Defendant have an actual controversy and opposing legal positions on Defendant's violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff Mary Elizabeth Wade prays for judgment and the following specific relief against Defendant:

1.    An order enjoining Defendant, its agents, officials, employees, and all persons acting in concert with them:

    a.   From continuing the unlawful acts, conditions, and practices described in this Complaint;

    b.   To modify its policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that her service dog will not be excluded should she desire to use the services of La Ventana Treatment Program;

    c.   That the Court issue preliminary and permanent injunction directing Defendant as current owner, operator, lessor, and/or lessee and/or its agents of the subject property and premises to modify the above described property, premises, policies and related policies and practices to provide full and equal access to all persons, including persons with disabilities; and issue a preliminary and permanent injunction under ADA section 12188(a) and state law directing Defendant to provide facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal

1    access, as required by law, and to maintain such accessible facilities

2    once they are provided and to train Defendant's employees and agents

3    in how to recognize disabled persons and accommodate their rights

4    and needs;

5    d.  An order retaining jurisdiction of this case until Defendant has fully

6    complied with the orders of this Court, and there is a reasonable

7    assurance that Defendant will continue to comply in the future absent

8    continuing jurisdiction;

9    2.    An award to Plaintiff of statutory, actual, general, treble, and punitive

10   damages in amounts within the jurisdiction of the Court, all according to proof;

11   3.    An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a,

12   California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5,

13   and as otherwise permitted by law, of the costs of this suit and reasonable attorneys'

14   fees and litigation expenses;

15   4.    An award of prejudgment interest under Civil Code § 3291;

16   5.    Interest on monetary awards as permitted by law; and

17   6.    Grant any other relief that this Court may deem just and proper.

18   Date: July 29, 2025                    CLEFTON DISABILITY LAW

19                                          */s/ Aaron M. Clefton*
20                                          By AARON M. CLEFTON, Esq.
                                            Attorneys for Plaintiff
21                                          MARY ELIZABETH WADE

22                              **JURY DEMAND**

23   Plaintiff demands a trial by jury for all claims for which a jury is permitted.

24   Date: July 29, 2025                    CLEFTON DISABILITY LAW

25                                          */s/ Aaron M. Clefton*
26                                          By AARON M. CLEFTON, Esq.
                                            Attorneys for Plaintiff
27                                          MARY ELIZABETH WADE

28

COMPLAINT FOR DECLATORY AND INJUNCTIVE RELIEF AND DAMAGES